IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCHE DIABETES CARE, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) C.A. No. _____ |
| INSULET CORPORATION, | ) ) **DEMAND FOR JURY TRIAL** |
| Defendant. | ) ) ) |

**COMPLAINT**

Roche Diabetes Care, Inc. ("Roche"), by and through its attorneys, hereby alleges for its Complaint against Insulet Corporation ("Insulet") as follows:

**NATURE OF THE ACTION**

1. This is an action for patent infringement arising under the United States Patent Act, 35 U.S.C. §§ 1 *et seq.*, including 35 U.S.C. § 271.

2. Plaintiff brings this action to seek relief for Insulet's infringement of Roche's rights arising under the Patent Laws of the United States 35 U.S.C. §§ 1, *et. seq.*, from U.S. Patent No. 7,931,613 ( the "'613 Patent").

**THE PARTIES**

3. Roche Diabetes Care, Inc., is and was a corporation organized and existing under the laws of Delaware, with its principal place of business at 9115 Hague Road, Indianapolis, Indiana 46256.  Roche Diabetes Care, Inc. is and was the owner by assignment of the '613 Patent.

4. Upon information and belief, Insulet is and was a corporation organized and existing under the laws of Delaware, with its principal place of business at 100 Nagog Park, Acton, Massachusetts 01720.

1

## JURISDICTION AND VENUE

5. Roche brings this action for patent infringement by Insulet arising under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has personal jurisdiction over Insulet because, *inter alia*, Insulet is and was incorporated in Delaware, and committed, aided, abetted, induced, contributed to, and/or participated in the commission of tortious acts of patent infringement that led to foreseeable harm and injury to Plaintiff in Delaware. Further, Insulet has and had substantial contacts with the forum as a consequence of its incorporation in Delaware and, upon information and belief, conducting business in Delaware.

7. Venue is proper in this District under 28 U.S.C. § 1400(b) because Insulet is and was a Delaware corporation that, upon information and belief, conducts and did conduct business in Delaware. Delaware is also the most convenient forum, and litigating this action in Delaware is in the interests of justice, under 28 U.S.C. § 1404(a).

## FACTUAL ALLEGATIONS

### Background

8. Roche has been pioneering innovative diabetes technologies and services for more than 40 years. Roche is and was a global leader in integrated Personal Diabetes Management, with more than 5,500 employees in over 100 markets worldwide working to provide crucial support to people living with diabetes and those at risk of developing diabetes. Under the brands RocheDiabetes, Accu-Chek, and mySugr, Roche has worked with its partners to provide glucose monitoring, insulin delivery systems, and digital solutions for personalized, patient-centered diabetes management.

9. Roche has invested significant resources in improving diabetes testing and care. As a result, Roche has been awarded many patents claiming glucose monitoring systems, insulin delivery systems, medical device communications and connectivity, digital health solutions, and lancing systems.

10. Insulet sells and did sell the Omnipod® Insulin Management System, which utilizes the same technology claimed in the '613 Patent. Therefore, Insulet infringed the '613 Patent by making, using (including during research and development activities and product testing), offering for sale, selling, and/or importing at least the Omnipod® products, or inducing or contributing to such acts.

11. On information and belief, Insulet knew of and/or was willfully blind to the '613 Patent and Insulet's infringement was knowing and willful. Insulet and Roche are and were sophisticated parties and competitors in the diabetes management market and, on information and belief, Insulet identified, monitored, investigated, and assessed its competitors' patents, including the '613 Patent. On information and belief, Insulet publicly stated that it was aware of patents and applications owned by competitors that covered insulin infusion and related devices, publicly acknowledged that third parties may have had patents on which Insulet's products infringed, and expected to be increasingly subject to third-party infringement claims. Additionally, Insulet has been long aware of the patent family containing the '613 Patent and therefore knew, or should have known, about the existence of the '613 patent itself. For example, Insulet's EP1702635A2 cites WO2000014533A1 (the "'533 Application"), a foreign grandparent application of the '613 Patent. The '533 Application and '613 Patent share the same inventors and overlapping specifications. On November 8, 2019, Insulet was also given notice of German patent DE 599 15 469.1, another member of the '613 Patent's family that shares inventors with the '613 Patent.

During the damages period, the '613 Patent was listed on Roche's public virtual marking page in association with the Accu-Chek Combo system, and Roche properly fixed the words "patent" or "pat." next to the virtual marking web address in compliance with 35 U.S.C. § 287.  Finally, the '613 Patent is known in the industry and has been cited by at least 20 patents.  Therefore, on information and belief, Insulet knew or should have known that its Omnipod® products were infringing.  Nevertheless, Insulet continued its willful and deliberate infringement of the '613 Patent.

### Asserted Patent and Infringing Products

12. The '613 Patent, entitled "Module For A Computer Interface," was duly and legally issued on April 26, 2011 to inventors Ulrich Haueter and Erich Imhof.  A true and correct copy of the '613 Patent is attached as **Exhibit 1**.  An exemplary infringement chart, attached as **Exhibit 2,** details Insulet's infringement of the '613 Patent.  These descriptions are not intended to limit Roche's right to amend, supplement, or modify these descriptions or any other analysis, description, or claim chart or allege that other activities of Insulet infringed the identified claim or any other claims of this patent or other patents.

13. Insulet manufactured, used, sold, offered for sale and/or imported the Omnipod® Insulin Management products.  The Accused Products include the Omnipod® Insulin Management System and any products or components that were imported, made, used, sold, and/or offered for sale by or on behalf of Defendant in connection with and/or as part of the Omnipod® Insulin Management System, or any other of Defendant's products that embody like functionality, including without limitation, the Omnipod® Starter Kit and Omnipod® 10 Pod Pack (the "Accused Products").

ME1 33639369v.1

## COUNT 1
### (INFRINGEMENT OF THE '613 PATENT)

14. Plaintiff incorporates each of the above paragraphs as though fully set forth herein.

15. On information and belief, Insulet directly or through the actions of its employees, agents, distributors, divisions, and/or subsidiaries, has infringed one or more of the claims of the '613 Patent, including at least claims 1 and 9, directly, indirectly, literally and/or by equivalents under 35 U.S.C. §§ 1 *et seq.*, including, but not limited to § 271 by, among other things, making, using (including during research and development activities and product testing), selling, offering for sale the Accused Products in the United States and/or importing the Accused Products within the United States, and/or inducing or contributing to such acts, without authority.

16. For example, the Accused Products meet each element of, and infringe, claim 1, which states:

> **Claim 1.** A system for administering a medical fluid to a body and for monitoring a substance level in a bodily fluid, the system comprising:
>> an administration device comprising a reservoir adapted to contain the medical fluid, a motor and drive mechanism for displacing the medical fluid from the reservoir into the body, and a first communication interface; and
>> a communication terminal remote from the administration device and comprising a housing, a processor, an input device in communication with the processor, a display in communication with the processor, a second communication interface in communication with the processor and configured to communicate with the first communication interface, a measuring device in communication with the processor and comprising a sensor configured to sense the substance level in the bodily fluid, and a memory;
>> wherein the processor is operatively associated with the memory and adapted to execute computer implemented instructions to receive communications from the administration device relating to medical fluid amounts delivered from the administration device, and to store in the memory historical medical fluid administration data and substance level measurement values over time based on the communications received from the administration device.

17. Additionally, the Accused Products meet each element of, and infringe, claim 9, which states:

5

>**Claim 9.** A method for administering a medical fluid to a body based on a monitored substance level in a bodily fluid, the method comprising:
>>placing the bodily fluid in contact with a sensor on a measuring device disposed in a communication terminal;
>>sensing the substance level in the bodily fluid using the sensor of the measuring device;
>>communicating the substance level to a processor in the communication terminal;
>>determining a medical fluid dosage to be administered to the body by an administration device remote from the communication terminal, the medical fluid dosage determined on the basis of the communicated substance level;
>>wirelessly communicating a dosage command from the communication terminal to the administration device;
>>administering the medical fluid to the body via the administration device according to the dosage command received from the communication terminal;
>>wirelessly communicating information relating to amounts of the medical fluid delivered from the administration device, from the administration device to the communication terminal; and
>>storing in a memory the historical medical fluid administration data and the substance level measurement values over time, wherein the memory is part of the communication terminal.

18. Insulet infringed each element of claims 1 and 9 of the '613 Patent. Insulet's own documents show that the Accused Products infringed the claims of the '613 Patent. As an example, U.S. Patent No. 7,931,613 Preliminary and Exemplary Claim Chart, detailing Insulet's infringement of these claims of the '613 Patent, is attached as **Exhibit 2**. This chart is not intended to limit Roche's right to modify the chart or allege that other activities of Insulet infringe the identified claims or any other claims of the '613 Patent. **Exhibit 2** is hereby incorporated by reference in its entirety. Each claim element in **Exhibit 2** that is mapped to the Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

19. Insulet has also induced infringement of the '613 Patent under § 271(b) by providing customers with the Accused Products, along with instructions for use, that, when followed in an intended manner and in a normal mode of operation, Insulet knew infringed the '613 Patent. *See, e.g.*, **Exhibit 3**, Omnipod UST400 User Guide (providing instructions for using

the Omnipod® Insulin Management System); **Exhibit 4**, Omnipod Caregiver Guide (same). On information and belief, Insulet knew of the '613 Patent. Further, the Accused Products function in the same manner as the claimed invention. *Compare* '613 Patent at 7:37-43 (describing wireless communication between a communications terminal and an insulin administration device placed on a user's body) with **Exhibit 3** at 2 ("The Omnipod® System is made up of two parts: The Pod, which delivers insulin to your body, and the Personal Diabetes Manager (PDM), which allows you to control the Pod."). The instructions for use of the Accused Products instructed and encouraged Insulet's customers to use the Accused Products in a way that infringed the patent. *See* **Exhibit 3; Exhibit 4.** Insulet provided its customers with the Accused Products and instructions for use despite knowledge of or willful blindness to the '613 Patent and knowledge or willful blindness to the fact that the induced acts infringed one or more claims of the '613 Patent. Therefore, Insulet specifically intended that its customers infringe the '613 Patent.

20. Insulet has contributorily infringed the '613 Patent under 35 U.S.C. § 271(c). Insulet designed the Accused Products specifically to be used in a manner as claimed in the '613 Patent. As such, the Accused Products were a material component of the patented combinations, specifically designed to be used according to the claims of the '613 Patent, and especially made and adapted for use in a manner that infringed the '613 Patent. The Accused Products were not staple articles of commerce and they did not have substantial uses that did not infringe the '613 Patent. On information and belief, Insulet knew of and/or was willfully blind to the '613 Patent and was aware that the Accused Products were especially made to be used in a system that infringed the '613 Patent.

21. Insulet's infringement was willful and deliberate because, on information and belief, Insulet knew of and/or was willfully blind to the '613 Patent and knew or should have

known of its infringement but acted despite an objectively high likelihood that such acts would infringe the '613 Patent.

## DEMAND FOR JURY TRIAL

22.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief, declaration and judgment that:

a.     Defendant has infringed the '613 Patent;

b.     Plaintiff is entitled to an award of damages pursuant to 35 U.S.C. § 284, including pre-judgment and post-judgment interest;

c.     Defendant's infringement of the '613 Patent was willful and Plaintiff is entitled to enhanced damages up to and including trebling of the damages awarded to it;

d.     Plaintiff is entitled to costs and reasonable expenses to the fullest extent permitted by law;

e.     This case is exceptional pursuant to 35 U.S.C. § 285, and Plaintiff is entitled to an award of attorneys' fees; and

f.     Plaintiff is entitled to other and further relief as the Court may deem just and proper.

| | |
|---|---|
| June 17, 2020 | MCCARTER & ENGLISH, LLP |
| | /s/ Daniel M. Silver |
| | Daniel M. Silver (#4758) |
| | Alexandra M. Joyce (#6423) |
| OF COUNSEL: | Renaissance Centre |
| | 405 N. King St., 8th Flr. |
| Robert J. Gunther, Jr. | Wilmington, DE 19801 |
| Omar A. Khan | (302) 984-6331 |
| Lauren Matlock-Colangelo | dsilver@mccarter.com |
| WILMER CUTLER PICKERING HALE | ajoyce@mccarter.com |
| AND DORR LLP | |
| 7 World Trade Center | *Attorneys for Plaintiff* |
| 250 Greenwich Street | |
| New York, NY 10007 | |
| (212) 230-8800 | |

9